IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC WARREN,                        :

      Plaintiff,                       :

vs.                                   :      CIVIL ACTION 08-522-KD-C

BOBBY PERKINS, et al.,                :

      Defendants.                      :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment.  (Docs. 14, 15).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.  In addition, Plaintiff's request for an extension of time is hereby denied, as Plaintiff has failed to offer the Court any valid reason for such request.  (Doc. 23, Letter Motion for Extension of Time).

## I.  SUMMARY OF ALLEGATIONS AND PROCEEDINGS

1. From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

2.  Plaintiff, while incarcerated at the Hale County Jail, claims that he was sprayed

in the eyes, ears, and mouth with pepper spray for no reason by Defendant Officer Bobby Perkins on July 9, 2008.  (Doc. 1 at 4-5, Complaint; Doc. 2 at 1, Notice of Filing Exhibit Letter).  Plaintiff further claims that his jail privileges were subsequently taken without a hearing, and that the Hale County Jail failed to provide him any medical care following the incident with the pepper spray.  (Doc. 2 at 1).

3. On September 15, 2008, Plaintiff filed the present § 1983 action.  (Doc. 1).  The Court construes Plaintiff's allegations as alleging an excessive force claim against Defendant Perkins and a denial of medical care claim against Defendant Hale County Jail. (Id.).  Additionally, it appears that Plaintiff may be attempting to allege a due process violation when he makes the statement that his "jail privileges were taken without a hearing," although this allegation does not appear to be directed to either defendant in particular, nor does Plaintiff elaborate even slightly as to what privileges he is claiming to have been taken.

4. Plaintiff has made no claim of injury other than a single statement made on a date less than one week following the incident, where Plaintiff stated that his eye was "bothering" him.  (Doc. 2 at 1).  Plaintiff seeks injunctive relief and compensatory damages.  (Doc. 1 at 7).

5. In the Answer and Special Report filed on February 9, 2009, Defendant Perkins denies Plaintiff's allegations and asserts the defenses of absolute and qualified immunity.[1]

---

[1] It is unclear as to whether Plaintiff has sued Defendant Perkins in his official and/or individual capacities.  As a state official, Defendant Perkins is absolutely immune from suit for damages in his official capacity, see Harbert Int'l, Inc. v. James, 157 F.3d

2

(Doc. 14 at 1-2, Answer).  Defendant Hale County Jail contends that it is not a legal entity subject to suit.  (Id. at 2).  It has also been asserted that Plaintiff's claims are barred by the PLRA because he has failed to exhaust the administrative remedies available to him while at the Hale County Jail.  (Id.).

6. Defendants respond that, on July 9, 2008, Officer Perkins noticed that Plaintiff had stored a bundle of personal clothing under a stairway in the cellblock dormitory. (Doc. 15, Ex. A at 1, Affidavit of Bobby Perkins).  Since inmates are not allowed to keep personal clothing outside of their cells, and because Plaintiff was away from the dormitory at the time, Defendant Officer Perkins took Plaintiff's clothing to the Hale County Jail's property room.  (Id.).  Inside of the bundle of clothing, Defendant Perkins found that Plaintiff had stored paperwork, so Officer Perkins went back to the dormitory to return Plaintiff his paperwork.  (Id. at 2).

7. When Officer Perkins returned to the dormitory, he signaled to Plaintiff who was standing at the top of the stairs, that he had Plaintiff's paperwork, and then placed the

---

1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  Qualified immunity is not available with respect to a claim of excessive force. See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).  Therefore, the only claim to which qualified immunity could apply is Plaintiff's claim for failure to provide medical treatment. Having found herein that Plaintiff's allegations related to his lack of medical treatment in this case do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

paperwork at the bottom of the stairs.  (Id.).  As Officer Perkins was exiting the dormitory, Plaintiff rushed down the stairs and caught the dormitory door with his hand before the door closed.  (Id.).  Plaintiff then held the door open, standing partially in the doorway and partially outside of the dormitory, which is forbidden without special permission.  Plaintiff demanded to know why Officer Perkins had taken his clothing. (Id.).

8. When Officer Perkins advised Plaintiff that he would bring him an Inmate Request Form if Plaintiff had a complaint regarding Officer Perkins' actions, Plaintiff began shouting obscenities and threats at Officer Perkins.  Officer Perkins ordered Plaintiff to close the door and return to the dormitory, but Plaintiff refused.  (Id.).

9. Despite Officer Perkins continuing to order Plaintiff to close the door and return to the dormitory three or four times, Plaintiff continued to refuse and continued to curse and threaten Officer Perkins.  (Id.).  Finally, Officer Perkins pulled out his pepper spray and advised Plaintiff that he would spray him if he did not release the door and return to the dormitory.  (Id.).  However, Plaintiff refused to release the door, and continued to curse and threaten Officer Perkins.  (Id.).

10. Officer Perkins has averred that because he was the only officer on the floor at that time, and because Plaintiff was standing outside the dormitory, refusing to close the door and return to the dormitory, and acting in a threatening manner, he sprayed Plaintiff in the face with a single spray of pepper spray to get him under control.  (Id.; Doc. 15, Ex. D at 2, Incident Report).

11. Following the spraying, Plaintiff was returned to his cell where he had access to water, and Officer Perkins gave him four decontamination pads for use on his eyes. Officer Perkins also gave Plaintiff a new jail uniform.  (Doc. 15, Ex. A at 3).

12. On March 16, 2009, the Court ordered that Defendants' Special Report and Answer be treated as a Motion for Summary Judgment.  (Doc. 21).  On March 13, 2009, Plaintiff filed an affidavit, reiterating his original claims.  (Doc. 22).  On April 22, 2009, Plaintiff filed a letter motion requesting an extension of time in this action, failing, however, to offer any basis for an extension.  (Doc. 23).  Defendants' motion and Plaintiff's filings are now before the Court.

## II.  SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not
> rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

4. "[T]here is no issue for trial unless there is sufficient evidence favoring the
nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely
colorable, . . . or is not significantly probative, . . . summary judgment may be granted."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations
omitted).  "Summary judgment is mandated where a party 'fails to make a showing
sufficient to establish the existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v.
Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III.  DISCUSSION

1. As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. §
1983 for alleged constitutional deprivations arising out of an altercation between himself
and Defendant Perkins on July 9, 2008, while Plaintiff was incarcerated in the Hale
County Jail.

2. Plaintiff claims that Defendant Officer Perkins used excessive force in spraying
pepper spray into his face.

3. Plaintiff further claims that Defendant Hale County Jail denied him medical care

after he was exposed to the pepper spray.  He also complains that his "jail privileges" were subsequently taken without a hearing.  (Doc. 2 at 1).

4. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

5. In addressing Plaintiff's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed. . . ."  Graham v. Connor, 490 U.S. 386, 394 (1989).

6. In this case, it is unclear from the record whether Plaintiff was being held in the Hale County Jail as a convicted prisoner, in which case the Eighth Amendment applies to him, or as a pretrial detainee, in which case the Fourteenth Amendment is applicable.  See Williams v. Limestone County, Ala., 198 Fed. Appx. 893, 896 n.3 (11th Cir. 2006) (citing Bell v. Wolfish, 441 U.S. 520 (1979)).  However, under either analysis, the result is the same.

7. "'[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'"  Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1318 n.13 (11th Cir. 2005) (quoting Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001)); see

7

also Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) ("'it makes no difference whether [plaintiff ] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same. . . .'") (citations omitted); Dailey v. Hunter, 2006 WL 4847739, *2 (M.D. Fla. 2006) ("the legal standards under the Eighth Amendment and the Fourteenth Amendment due process clause are the same, and the Eighth Amendment case law is applicable."); Williams, 198 Fed. Appx. at 896 n.3 ("the standard for violations of the Eighth Amendment apply to pretrial detainees through the due process clause.").

A. Excessive Force.

8. The Eighth Amendment allows a convicted inmate to be punished as long as that punishment is not "cruel and unusual." Bell, 441 U.S. at 535 n.16 (citing Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain. . . , the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

9. In order to establish an Eighth Amendment claim, an inmate must prove both an objective and subjective component. First, the plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, he must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).

10. Under the Fourteenth Amendment, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, 441 U.S. 520, 535 (1979).  Therefore, the use of excessive force against a pretrial detainee amounting to punishment is strictly prohibited.  See Graham, 490 U.S. at 395 n.10.

11. However, "not every application of intentional force rises to the level of a deprivation of due process."  Bozeman, 199 F. Supp. 2d 1216, 1229 (M.D. Ala. 2002) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

12. "Whether a jailer's use of force is excessive, and thus violates the inmate's Fourteenth Amendment right to be free from cruel and unusual punishment, depends on whether the jailer's act 'shocks the conscience,' Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007), and it necessarily will if the force 'was applied ... maliciously and sadistically for the very purpose of causing harm.'" Cockrell, 510 F.3d at 1311 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

13. In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are essentially the same as those used under a Fourteenth Amendment analysis: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered.[2]

---

[2] In assessing the actions of a corrections officer under the Fourteenth Amendment, the Eleventh Circuit has adopted the analysis set forth by the Second Circuit in Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973):

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.  In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was

Hudson, 503 U.S. at 7 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)).

14. Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendant Perkins violated Plaintiff's rights under either the Fourteenth or Eighth Amendment.

15. Under the circumstances of this case, the Court finds that Plaintiff's allegations fail to establish a violation under either amendment.

16. In assessing the factors enumerated above, specifically, the threat reasonably perceived by Defendant, the need for the use of force, and Defendant's motive in using force, it is evident that the disruptive behavior of Plaintiff created a chaotic and dangerous situation which undermined the authority and control of Defendant Officer Perkins.

17. Plaintiff has even admitted that he was not following Officer Perkins' orders at the time of the incident.  (Doc. 2 at 1).  Plaintiff states that he asked Officer Perkins why he took Plaintiff's shirt, and that Officer Perkins responded by ordering Plaintiff to close the dormitory door.  (Id.).  Plaintiff, instead of closing the door, replied, "why can't you talk to me like a man and explain why you take my shirt?"  (Id.).

18. Officer Perkins has averred that Plaintiff was disruptive, refusing to return to his dormitory as ordered, while cursing and threatening Officer Perkins.  (Doc. 15, Ex. A

_____

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

Gilmere v. City of Atlanta, Ga., 774 F.2d 1495, 1500-01 (11th Cir. 1985) (quoting Johnson, 481 F.2d at 1033).  Accord Bozeman, 199 F. Supp. 2d at 1229.

at 2).  Additionally, Defendants have submitted the affidavit of an inmate who witnessed the incident and confirmed that Officer Perkins did advise Plaintiff "to close the door and reenter the dormitory multiple times," and that, only after Plaintiff refused to obey this order multiple times did Officer Perkins spray Plaintiff with pepper spray.  (Doc. 15, Ex. B at 1).

19.  Therefore, the need to use some measure of force to restore order was present, and there is no indication that Officer Perkins' motive in spraying the pepper spray at Plaintiff was anything other than a good faith effort to end Plaintiff's disruptive and threatening outburst and restore discipline and control.

20. With respect to the amount of force used by Defendant, the Court is mindful that, while an inmate must be protected from the "'unnecessary and wanton infliction of pain' by prison officials," prison officials must maintain order and discipline "in an often dangerous and unruly environment."  Ort, 813 F.2d at 321-22.  Thus, prison officials must be extended deference "in acting to insure the proper administration, safety and security of a penal institution."  Id. at 322.

21. "'The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.'"  Id. at 323 (citations omitted).

22. With these considerations in mind, the Court finds that the force used by Defendant Perkins, *i.e.*, spraying pepper spray into Plaintiff's face to force Plaintiff to end

the threatening outburst and to close the dormitory door which he was holding open in violation of direct orders, was applied for the purpose of restoring order and was not, in any event, excessive.

23. Officer Perkins repeatedly ordered Plaintiff to close the dormitory door and return to his cell.  Despite the numerous orders from Officer Perkins, Plaintiff continued to curse and threaten Officer Perkins, as well as refuse to release the door.  (Doc. 15, Ex. A at 2).  Even when Officer Perkins showed Plaintiff the can of pepper spray and warned Plaintiff that he would spray him if he did not close the door and return to the dormitory, Plaintiff continued his disruptive outburst and refused to close the door.  (Id.).

24. Officer Perkins' use of pepper spray, after his warnings had failed, ended a threatening exchange that was escalating in intensity and danger, particularly as Officer Perkins was the only officer on the floor at the time of this incident.  "Pepper spray is an accepted non-lethal means of controlling unruly inmates."  Danley, 540 F.3d at 1307.

25. By using pepper spray, Officer Perkins avoided the use of physical force by himself and possibly other officers against Plaintiff and even potentially other inmates in the dormitory to stop the disruptive behavior, thereby tempering the severity of the forceful response.  Cf. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) (recognizing that "pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee.").  Also, Officer Perkins used only one spray of pepper spray on Plaintiff.  (Doc. 15, Ex. D at 2).

26. Moreover, after being sprayed, Plaintiff was returned to his cell where he had

12

access to water, and Officer Perkins went to the medical unit and obtained four

decontamination pads for Plaintiff.  Officer Perkins then gave Plaintiff the

decontamination pads, along with a new jail uniform.  (Doc. 15, Ex. A at 3).

27. Considering the final factor, the extent of injury suffered, the Court is mindful

that inherent in the protection afforded by both the Fourteenth and Eighth Amendments is

the principle that "not 'every malevolent touch by a prison guard gives rise to a federal

cause of action.'"  Clark v. Johnson, 2000 WL 1568337, *12 (S.D. Ala. 2000)

(unpublished)[3] (quoting Hudson, 503 U.S. at 9-10).

28. Under the Fourteenth Amendment, "[t]here is . . . a *de minimis* level of

imposition with which the Constitution is not concerned."  Ingraham, 430 U.S. at 674.

29. Similarly, the objective component of an Eighth Amendment excessive force

claim "necessarily excludes from constitutional recognition *de minimis* uses of physical

force, provided that the use of force is not of a sort 'repugnant to the conscience of

mankind.'"[4]  Hudson, 503 U.S. at 9-10 (quoting Whitley, 475 U.S. at 327).

_____

[3]"Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865, 2007 WL 3307384, *3 (11th Cir. 2007).

[4] While the Supreme Court in Hudson did not define "*de minimis* use of force," it held that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary quantum of injury an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury.  Id. at 9 ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

30. The record in the present case is devoid of evidence of injury to Plaintiff from his exposure to pepper spray.  Even Plaintiff does not allege any significant, lasting ill effects from the pepper spray.

31. While the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, Defendant's actions in this case, as described by Plaintiff, do not involve diabolic or inhuman torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind.  On the contrary, Defendant's actions, as described by Plaintiff, reflect a tempered response to a chaotic and dangerous situation caused entirely by Plaintiff's own behavior.

32. Accordingly, the Court finds that, in this case, Plaintiff's allegations simply do not support his claim that he was subjected to anything other than *de minimis* force, which is insufficient to establish a constitutional violation under the Fourteenth or Eighth Amendment.  See Fischer v. Ellegood, 238 Fed. Appx. 428, 431, 2007 WL 1624315, *3 (11th Cir. 2007) (unpublished) (affirming summary judgment for jail employees on

---

quantity of injury.").  At the same time, the court suggested that the degree of injury received is relevant to determining whether more than *de minimis* force was used.  See id., 503 U.S. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimis* use of force).  In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind.  Therefore, the extent of Plaintiff's injury is an important factor in determining whether more than *de minimis* force was used.

Eighth Amendment excessive force claim where pepper spray was administered for purpose of restoring order, and it was "doubt[ful]" that plaintiff suffered any injury from the exposure).

33. Accordingly, whether analyzed under the Eighth or Fourteenth Amendment, Plaintiff's excessive force claim fails as a matter of law.

B. Inadequate Medical Treatment.

34. "[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to **serious** medical needs." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (emphasis added).

35. Having found herein that Plaintiff suffered nothing more than *de minimis* injury as a result of his exposure to pepper spray, he can have no claim under the Eighth or Fourteenth Amendment for failure to provide adequate medical care for a "serious" medical need. Id.

36. Therefore, Defendants are entitled to judgment on Plaintiff's denial of medical care claim as a matter of law.

C. Due Process.

37. The Court construes Plaintiff's vague and general statement of "[m]y jail

15

privileges were taken without a hearing" to be an allegation of a due process violation. (Doc. 2 at 1). Although Plaintiff fails to enlighten the Court as to what type of privileges were taken from him, the Court will assume that Plaintiff was denied visitation, store, and telephone privileges.

38. In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property." Wolff v. McDonnell, 418 U.S. 539, 556 (1974); U.S. Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...").

39. However, the Court finds that the Constitution does not grant an inmate a right in visitation, store, and telephone privileges. See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); Moore v. Pemberton, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment two-week loss of commissary privileges); Walker v. Loman, 2006 WL 3327663, at *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest) (unpublished). And the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone and visitation privileges. Dumas v. State, 675 So.2d 87, 88 (Ala. Crim. App. 1995).

40. Therefore, Plaintiff's claim relating to being deprived of his "jail privileges"

16

without a hearing fails as a matter of law.

    D.  <u>Claims Against Hale County Jail</u>.

    41. Although Plaintiff has failed to assert any constitutional violations in this action, even if he had properly raised a constitutional claim, Defendant Hale County Jail is not a proper defendant.

    42. In order to bring a viable § 1983 claim, the defendant sued must be an entity that is subject to being sued.  <u>Dean v. Barber</u>, 951 F.2d 1210, 1241 (11th Cir. 1992).  The capacity of a party to be sued is "determined by the law of the state in which the district court is held...."  Fed. R. Civ. P. 17(b); <u>see</u> <u>Dean</u>, 951 F. 2d at 1214.

    43. "Sheriff's departments and police departments are not usually considered legal entities subject to suit."  <u>Id.</u>  In Alabama, a sheriff's department does not have the capacity to be sued.  <u>Id.</u>; <u>King v. Colbert County</u>, 620 So. 2d 623, 626 (Ala. 1993); <u>White v. Birchfield</u>, 582 So. 2d 1085, 1087 (Ala. 1991).  Moreover, Alabama law provides that the sheriff, or a jailer who is appointed by the sheriff, "has the legal custody and charge of the jail in his county and all prisoners committed thereto...."  <u>Ala.</u> <u>Code</u> § 14-6-1.

    44. Generally, a sheriff's department operates a county jail.  Because a sheriff's department lacks the capacity to be sued, then it follows that the jail likewise lacks the capacity to be sued.  <u>Holifield v. City of Mobile Mun. Court</u>, 2009 WL 793516 (S.D. Ala. March 19, 2009) (unpublished); <u>see</u> <u>also</u> <u>Hawes v. Bowden</u>, 2009 WL 88554, at *3 (M.D. Ala. Jan. 13, 2009) (unpublished) ("A county jail is not a legal entity and, therefore, is not subject to suit or liability under § 1983.").

45. Therefore, Defendant Hale County Jail is entitled to judgment as a matter of law as to all of Plaintiff's claims.

E. Administrative Remedies and the PLRA.

46. Finally, even if Plaintiff had asserted a constitutional violation, it appears that Plaintiff failed to properly exhaust the administrative remedies available to him at the Hale County Jail, thus barring him from now bringing these claims in this Court.

47. "The Prison Litigation Reform Act of 1995 (PLRA) ... requires prisoners to exhaust prison grievance procedures before filing suit." Jones v. Bock, 549 U.S. 199 (2007). Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

48. "Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the §1997e(a) requirement." Mason v. FNU Bridger, 261 Fed. Appx. 225, 228 (11th Cir. 2008) (citing Booth, 532 U.S. at 741; and Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). "There is no

question that exhaustion is mandatory under the PLRA." <u>Jones</u>, 549 U.S. at 199-200 (citing <u>Porter</u>, 534 U.S. at 524).

49. Furthermore, it has been held that "the PLRA exhaustion requirement requires <u>proper exhaustion</u>." <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006) (emphasis added). In <u>Woodford</u>, the Supreme Court explained that to properly exhaust "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." <u>Id.</u> at 88. The Court went on to explain that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings... Construing §1997e(a) to require proper exhaustion... fits with the general scheme of the PLRA, whereas [a contrary] interpretation would turn that provision into a largely useless appendage." <u>Id.</u> at 90-93.

50. Defendants put forth evidence that the Hale County Jail has a grievance procedure in which officers will provide an inmate an "Inmate Request Form" if the inmate desires to make a grievance known. (Doc. 15, Ex. C at 1, Affidavit of Mary Long). A copy of this form would then be placed and retained in the inmate's file. (<u>Id.</u>). However, there is no evidence of a form having been filed by Plaintiff regarding this matter. (<u>Id.</u>).

51. In his Complaint, Plaintiff states that he did "fill out a form," but offers nothing further to support his claim that he took advantage of the administrative remedies available to him at Hale County Jail. (Doc.`1 at 4).

52. It has been held that a district court may properly resolve factual issues related to whether a plaintiff exhausted his administrative remedies.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).

53. Thus, this Court may properly resolve this particular factual issue, as our sister court in the Middle District of Alabama has recently done in similar situations, and this Court finds that the evidence reflects that Plaintiff failed to properly exhaust his available administrative remedies at the Hale County Jail.  See Allen v. Vaugner, 2009 WL 857000 (M. D. Ala. March 26, 2009) (dismissing plaintiff's complaint with prejudice for failing to exhaust administrative remedies, noting that plaintiff's conclusory self-serving statements claiming that he did file grievances regarding the subject allegations were not sufficient to create an issue of material fact when defendants offered plaintiff's inmate file documenting the fact that plaintiff had not filed a grievance regarding the allegations made the subject of the complaint).

54. As noted above, exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and may not be waived by the court.  See Alexander, 159 F.3d at 1324-26; see also Porter, 534 U.S. 516.  Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323).

55. Other than Plaintiff's self-serving, conclusory allegation that he filed a grievance at the Hale County Jail regarding this pepper spray incident, there is no record or documentation that Plaintiff made any complaints against Defendants about this matter.  Plaintiff's reliance solely on his own self-serving statement, without supporting evidence, is simply insufficient. Thus, the Court finds that Plaintiff has failed to make a colorable showing that he properly

20

exhausted the administrative remedies available to him at the Hale County Jail.

56. Therefore, even if Plaintiff had asserted a constitutional violation in this action, he would be barred from bringing that claim because he failed to exhaust an administrative remedy which is a precondition to proceeding in this Court.

## IV.  CONCLUSION

57. If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. Celotex Corp., 477 U.S. at 322.

58. "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation."  Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990).  Therefore, since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

59. Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

60. Accordingly, it is recommended that the Motion for Summary Judgment of Defendants Bobby Perkins and the Hale County Jail be GRANTED and that the entirety of Plaintiff's Complaint against these Defendants be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

DONE this 13th day of July, 2009.


s/WILLIAM E. CASSADY

UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the

cost of the transcript.